IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00063-MSK-MEH

KEVIN DONOVAN,

      Plaintiff,

v.

AVAYA, INC.,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendant's Rule 12(b)(6) Motion to Dismiss [filed January 15, 2014; docket #14].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #16].  The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication.  For the reasons that follow, the Court respectfully RECOMMENDS that the Motion to Dismiss be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

Plaintiff Kevin Donovan (Donovan) initiated this action on December 23, 2013 in the District Court of Arapahoe County, Colorado. (Docket #1.)  On January 8, 2014, Defendant Avaya, Inc. (Avaya) removed the action to this Court under 28 U.S.C. § 1332 (diversity jurisdiction; amount in controversy).  (*Id.*)  Pursuant to this Court's order, Plaintiff filed a Second Amended Complaint on May 30, 2014. (Docket #41.)

### I.    Facts

Donovan makes the following factual allegations in his Second Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Avaya employed Donovan in its Colorado office from 1989-2005.  Donovan left employment in 2005, and subsequently renewed employment with Avaya as a Systems Engineer in August 2010. In December 2011, Avaya promoted Donovan to a "Named Account Manager IV."

In his new position, Avaya presented Donovan with two Sales Compensation Plans (collectively known as "the Plan").  The Plan sets forth the commissions Avaya agreed to pay Donovan.  Avaya told Donovan that he would receive a base salary as part of his compensation package, plus "incentive commissions" he earned by bringing contracts to Avaya. Donovan – believing he would be paid commissions on business he generated – moved forward on the Plan and began seeking out business in order to develop contracts.

In early 2013, Donovan was on track to reach his contracted quota.  Once Donovan reached and exceeded his quota, he was in the position to receive commissions as described in the Plan. Avaya operates on a fiscal year ending each September 30th. For Fiscal Year 2013, Avaya had

provided Donovan with a quota for fiscal year 2013 (FY13, October 1, 2012 through September 30, 2013) in the fall of 2012.  Donovan's FY2013 Avaya Condition Sheet was provided and detailed the customers and quota measurements in objectives in the document entitled FY 13 Condition Sheet Compensation.  Donovan's FY13 original condition sheet shows he started the year with $4.6M total PM 1 (Performance Measure 1) top line revenue goal. PM2 (Performance Measure 2) was for Maintenance revenue with the target of $5.8M and the PM3 (Performance Measure 3 - Advanced Products (Avaya Networking, Video, CC) was $690,000. Donovan's FY13 annual target incentive pay was $109,050.00 and his compensation plan title was Named Account Manager Gov.

Donovan opposed the quota increase, in writing, directly to his boss.  Donovan's boss told Donovan he would not receive commissions on any account until he signed the updated Condition Sheet with the increased quota.  Donovan felt he had no choice but to resign.

Donovan closed many deals for Avaya  (and thus expanded  its business), and these deals represent the main components of the Promised Commissions in question that Avaya had indicated to Donovan it will not pay, though Promised Commissions are due. Donovan states that there are within Avaya's system, documents detailing the AvayaGov FY13 compensation plan, policies and a PowerPoint utilized to train the sales team on the changes for FY13.

Donovan considered himself "constructively discharged" because he was not compensated in accordance with the Plan.  Donovan claims he is owed $135,455.67 in earned commissions on one contract alone.  Donovan's last day of employment at Avaya was October 14, 2013.

On December 9, 2013, Donovan, through counsel, mailed a letter to Avaya's officers demanding payment of the amount of unpaid compensation.  At no time prior to the commencement of the litigation did Avaya respond to payment demand.  On December 23, 2013, Donovan initiated

this lawsuit.

## II.     Procedural History

In an Amended Complaint, Donovan asserted seven claims for relief, including claims for: (1) Declaratory Relief, (2) Fraudulent Misrepresentation, (3) Breach of Contracts, (4) Tortious Interference with Economic Advantage, (5) Promissory Estoppel, (6) Constructive Discharge, and (7) Unpaid Wages Pursuant to Sections 8-4-109 and 8-4-110, Colorado Revised Statutes against Avaya.  All seven claims arise from the events leading up to Donovan's termination of employment in October 2013.   After removal of the action to this Court, Avaya filed the present motion to dismiss Donovan's First (declaratory relief), Fourth (tortious interference with economic advantage), and Sixth (constructive discharge) Claims for Relief on January 15, 2014.  Donovan has since agreed to the withdrawal of the tortious interference and constructive discharge claims and, thus, omitted them from the operative Second Amended Complaint.

Consequently, only the first claim for declaratory relief will be considered in addressing the current motion to dismiss.  The parties completed briefing on February 2, 2014 and agreed that the briefing would stand for the later filing of the Second Amended Complaint.  The Court has reviewed the operative pleading, the motion, the briefs and the applicable law, and is sufficiently advised.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires

a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

Donovan brings his first claim for declaratory relief pursuant to Colo. R. Civ. P. 57.[2] Specifically, Donovan argues "a judicial declaration is necessary to determine the rights, status, and other legal relations between Mr. Donovan and Avaya." Second Amended Complaint, ¶ 40. Donovan alleges he is entitled to future commissions based on his "pipeline" of potential contracts he secured during his employment. Avaya argues that the Court can grant no future relief because there is no longer a relationship between Donovan and Avaya. Avaya also contends that the declaratory relief claim duplicates the breach of contract and misrepresentation claims.

A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004) (McConnell, J., concurring) ("[A] declaratory judgment action involving past conduct that will not recur is not justiciable."). Further, it is "well established that what makes a declaratory judgment action a proper judicial resolution of a 'case or controversy' rather than an advisory opinion – is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Id.* "[A] plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future." *Id.*

To establish that a case or controversy exists, Donovan must demonstrate that the

_____

[2]Because this case was properly removed from state court, the Court will analyze Plaintiff's claim for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

controversy is: (1) definite, concrete, and touches on the legal relations of the parties, and (2) sufficiently immediate and real. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In short, "[t]he ultimate question is whether declaratory relief will have some effect in the real world." *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000). Further, "[e]ven if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the propriety of declaratory judgment[.]" *Exec. Risk Indem. Inc. v. Sprint Corp.*, 282 F. Supp. 2d 1196, 1202 (D. Kan. 2003)).

The Tenth Circuit has stated that a district court should consider the following factors when deciding whether to entertain a request for declaratory relief:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

Under the present Fed. R. Civ. P. 12(b)(6) standard, the Court views the allegations in the complaint as true to determine whether they plausibly support a legal claim for relief; specifically, whether there are enough facts to support all of the elements necessary to establish an entitlement to relief under the legal theory proposed.

In his Second Amended Complaint, Donovan alleges that he developed a "pipeline and that compensation in the form of commissions would necessarily be paid [by Avaya] at a future time after the contracts would be signed." (Docket 41, ¶ 10.) Donovan claims "Avaya incentivized Mr.

Donovan with, among other commitments, the Promised Commissions, and is now refusing to pay Mr. Donovan the Promised Commissions for the deals Mr. Donovan closed." (*Id.*, ¶ 34.)

Here, Avaya contends that, because Donovan terminated his employment with Avaya, "there is no conceivable way in which Avaya's future conduct towards Plaintiff can be altered by any declaratory relief ... there is no ongoing relationship between the parties and Plaintiff has not alleged any facts suggesting that there may be a relationship in the future."   Motion, docket #14 at 3-4. Donovan counters that he "requires a declaration from this Court that as a matter of contract construction, or as [a] matter of equity, he is entitled to compensation from the 'pipeline' he brought to Avaya during the term of his employment."  Response, docket #22 at 7.  Avaya replies that the "pipeline" allegation is based on "nonexistent contracts" and Donovan cites to no contract provision entitling him to commissions based on future monies received by Avaya.

The Court finds that Donovan's allegations concerning his entitlement to future commissions raise disputed issues of material fact which are not properly resolved in a Rule 12(b)(6) motion. That is, the Court cannot determine whether the contracts on which Donovan's "pipeline" allegation is based are "nonexistent," or whether the contract entitles him to commissions beyond the termination of his employment, without reviewing the contract or hearing testimony.  The Court has reviewed cases in which the answer to whether an employee is entitled to future commissions is found in the terms of a compensation agreement. *See, e.g., Barnes v. Van Schaack Mortg.*, 787 P.2d 207, 209 (Colo. App. 1990); *Cavic v. Pioneer Astro Indus., Inc.*, 825 F.2d 1421, 1424 (10th Cir. 1987).  Accordingly, the Court will not recommend dismissal of Donovan's declaratory judgment claim based on Avaya's argument regarding future conduct.

However, the Court finds persuasive Avaya's alternate argument that Donovan's request for

declaratory relief is redundant and unnecessary as it is duplicative of his claims for misrepresentation and breach of contract.  Motion, docket #14 at 4.  In fact, the allegations supporting the claim for declaratory relief are essentially identical to those in both the misrepresentation and breach of contract claims.  *See* Second Amended Complaint, docket #41 at 7-10.  While it is possible that Avaya owes Donovan commissions on contracts that Donovan helped close while he was working for Avaya, the terms of these contracts were likely addressed in Donovan's contract, and any damages relating to these deals would be governed by Donovan's breach of contract claim.  Nevertheless, Donovan argues that declaratory relief is necessary to clarify the rights and legal relations between him and Avaya regarding any commission payments owed from Donovan's alleged "pipeline"; however, such issue can (and will) be resolved in the context of the contract and fraud claims.  *See Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (a plaintiff's legal interest "must be more than simply satisfaction of a declaration that a person was wronged").

Accordingly, the claim for declaratory relief would not settle a "controversy," as contemplated by *Mhoon*, and would serve no useful purpose.  *See Cleveland v. Talent Sport, Inc.*, No. CIV-12-789-D, 2013 WL 2178272, at *3 (W.D. Okla. May 17, 2013) ("Because it appears that all issues identified for resolution by declaratory judgment will be decided in adjudicating his other claims, Plaintiff's declaratory judgment claim serves no useful purpose.").  Certainly, the determination of Donovan's contract and fraud claims are a more effective means of securing the remedy Donovan seeks by his claim for declaratory relief – whether the compensation agreement or promises made to Donovan support his claim for commission payments owed, even after the termination of Donovan's employment.  Thus, the applicable factors weigh in favor of dismissal.

Donovan's cited cases do not persuade the Court to find otherwise.  First, in *McBride v. Market Street Mortg.*, 381 F. App'x 758 (10th Cir. 2010), the Tenth Circuit affirmed the trial court's declaration that the plaintiff was not bound by the nonsolicitation and noncompetition clauses of an agreement terminated for cause.  No other claims brought by the plaintiff in *McBride* would settle the issue raised in the request for declaratory relief.  *See id.* at 759-60.  Likewise, in *Eureka Water Co. v. Nestle Waters N. Am.*, 690 F.3d 1139, 1145, 1149 (10th Cir. 2012), the court was asked to determine an alleged ambiguity in the parties' license agreement and declare the scope of the contract; no other claim brought in the case would settle the issue as to future conduct under the contract.  Finally, in *Marlin Oil Corp. v. Lurie*, 417 F. App'x 740, 741 (10th Cir. 2011), the court affirmed a declaration that the plaintiff oil and gas company could offset future working interest payments to the defendant until all overpayments made to the defendant in error were recouped.  Again, the only other claim made by the plaintiff for unjust enrichment would not settle the issue.

Moreover, Donovan attempts to distinguish between his damages claims that seek payments "owed at the time of his constructive discharge" and his request for declaratory relief to determine "his right to recover with respect to future money Avaya will receive based on the 'pipeline.'"  Response, docket #22 at 7.  However, as set forth above, Donovan's right to recover commissions payments will be determined by review of the applicable contract and/or any testimony as to the alleged promises.  Whether the money was owed at the time of the employment separation or thereafter will be determined by the same means.  Consequently, the declaratory judgment requested in this case will not be useful.

Therefore, the Court finds no need to issue a declaratory judgment regarding issues inherent in Donovan's other claims, and recommends that the District Court decline, in its discretion, to

entertain a separate declaratory judgment claim in this case.

## CONCLUSION

Here, Donovan has failed to state a cognizable first claim for declaratory relief, which is duplicative of his contract and fraud claims and would serve no useful purpose.  Accordingly, the Court respectfully RECOMMENDS that Defendant's Rule 12(b)(6) Motion to Dismiss [filed January 15, 2014; docket #14] be **GRANTED** as set forth herein.

Respectfully submitted this 3rd day of June, 2014, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

11